**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| SYLVIA YOUNG, | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| v. | | Case No.: PWG-14-2006 |
| | * | |
| GIANT FOOD STORES, LLC, | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff brings this action against her former employer for disability and sex discrimination, failure to accommodate, and retaliation against her former employer.  According to Plaintiff, she was subjected to unfavorable treatment on the basis of sex, was not accommodated when she later became disabled, and eventually was fired as a result of either her disability, her gender  or her complaints about discrimination.  Defendant has moved to dismiss for failure to state a claim, arguing that Plaintiff's sparse factual allegations do not suffice to make out a *prima facie* case on any of her claims.  Plaintiff opposes the motion arguing that her pleadings are sufficient, but also seeks leave to amend her complaint a second time to add further allegations.  Defendant opposes amendment as untimely and futile.  I find that Plaintiff has pleaded a retaliation claim and that her amended complaint pleads a claim for failure to accommodate, but otherwise she has failed to state the remainder of her claims.  Accordingly, both motions are granted in part and denied in part, as more fully explained below, and Plaintiff

may proceed with the failure to accommodate and retaliation claims pleaded in her amended complaint

## I.     BACKGROUND

For the purposes of considering Defendant's motion, I accept the facts that Plaintiff has alleged in her Amended Complaint, ECF No. 3, as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).   Plaintiff Sylvia Young is an African-American woman residing in Fort Washington, Maryland.   Am. Compl. ¶ 3.   Young was an employee of Defendant Giant of Maryland LLC[1] ("Giant") from approximately July 12, 2004 until her termination in December of 2011. *Id.* ¶¶ 9, 28.

Young's complaint does not discuss her experiences at Giant prior to March 2011, when Charles Bentley became her supervisor. *Id.* ¶ 10.   At that time, Young was one of two females among the approximately ten individuals supervised by Bentley. *Id.*   According to Plaintiff, Bentley "exhibited a particular disdain and disrespect for her as compared to her male colleagues," frequently yelling at her, "refusing to provide her with the resources he provided to male co-workers to do their jobs," and ignoring her attempts to contact him. *Id.* ¶ 11.

On or about July 28, 2011, Young met with another individual, Rob Rosoto[2] and "complained about Mr. Bentley's disparate treatment of her as compared to her male co-workers.

---

[1] According to Defendant, Plaintiff's employer was named incorrectly in the caption of the original Complaint, and properly should be referred to as Giant of Maryland LLC, and not Giant Food Stores, LLC.   Def.'s Dismiss Mem. 1 & n.1, ECF No. 8.   As discussed below, Plaintiff concurs that Giant of Maryland LLC is the proper defendant and seeks to amend the caption of her complaint. *See* Am. Compl., ECF No. 16-1.   Amendment to correctly name the defendant will be permitted.

[2] Rosoto's position is not stated clearly in the Amended Complaint, but it appears from context that he was Bentley's superior.

Mr. Rosoto became upset at Ms. Young's complaint, yelled at her and told her that he would terminate her employment if she ever came to him again with another complaint." *Id.* ¶ 13. Young was so distressed by this response that she became physically ill, went to the hospital that day, and was hospitalized for the next week. *Id.* ¶ 14. At this time, she was diagnosed with "stress-related blood clots," which incapacitated her to the point that she was unable to work "between September 2011 and October 2011." *Id.* ¶ 15.

As a result of her condition, combined with medication related to a 2005 stroke she had suffered, Young "could not sit for long periods of time, could not drive for long periods of time, could not lift heavy objects, and could not bend or twist." *Id.* ¶ 16. She sought reasonable accommodations for her disability, but Giant "refused to even engage in the interactive process." *Id.* ¶ 17. Rather, on October 18, 2011, Jodie Kans, a human resources representative informed Young that she would be suspended from October 18 through November 5, 2011 "because she allegedly could not properly perform her duties." *Id.* ¶ 18. On October 24, 2011, Kans advised Young that she was eligible for short-term disability coverage from Giant's third-party insurance carrier, but Young did not want to go on disability leave because she believed she was able to work. *Id.* ¶ 19.

On December 2, 2011, Young's attorney[3] sent a letter to Rosoto and Kans advising them that his firm would be representing Young "regarding her employment for claims of gender discrimination, disability discrimination, and retaliation based on harassment and adverse actions." *Id.* ¶ 20. On December 5, 2011, Giant acknowledged receipt of that letter in writing and also summoned Young to a mandatory meeting with Rosoto, Kans, and Susette Stevens (whose position is not made clear in the Complaint). *Id.* ¶¶ 21–22. At the meeting, Young was

---

[3] Young's attorney in 2011 was not the same attorney currently representing Young in this case.

ordered to provide information about her whereabouts on four specific days in October 2011: October 2, 4, 8, and 16. *Id.* ¶ 23. When Young could not account for those days from memory, she was suspended and told that she could present any evidence of her whereabouts on those days to Rosoto in a meeting to take place on December 9, 2011. *Id.* ¶ 24.

Rosoto was not available to meet with Young when she showed up on December 9, 2011 with her notes showing the work she had done on the days in question. *Id.* ¶ 25. Instead, the head of human resources, Ira Crest, and another human resources representative, Ted Garrett, came to speak with Young. *Id.* ¶ 26. Crest asked her, "'Are you still planning on filing this suit against us?'" *Id.* After Young confirmed that she was, she was not given an opportunity to present her notes and, instead, was told that she would be suspended while Giant "conduct[ed] a thorough investigation of the matter." *Id.* ¶ 27.

On December 15, 2011, Rosoto telephoned Young to inform her that, because "he could not verify her whereabouts on the dates in question, she was fired." *Id.* ¶ 28. Rosoto told Young that he had not spoken with the person who had controlled her schedule on the dates in question. *Id.* ¶ 29. Young later learned that her health insurance had been terminated effective December 11, 2011. *Id.* ¶ 30.

Young filed a Charge of Discrimination (the "EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Prince George's County Office of Human Rights ("OHR"). *Id.* ¶ 5. Though the procedural history of her case is somewhat confusing, it appears that she first received a Dismissal and Notice of Rights letter in June 2012, Compl. Ex., *Young v. Giant Food*, No. PJM-12-2772 (D. Md. Sept. 17, 2012) (*Young I*), ECF No. 1-6, and initially filed suit in this Court, *pro se*, on September 17, 2012, Compl, ECF No. 1 in *Young I*. Judge Peter J. Messitte initially appointed a *pro bono* attorney to prepare a

written report evaluating the viability of Young's case, Mem., ECF No. 5 in *Young I*, before declining to appoint counsel, Marginal Order, ECF No. 7 in *Young I*.[4]   Eventually, Young voluntarily dismissed her case without prejudice before serving Giant, stating that "the letter of right to sue was sent in error."   Mot. for Voluntary Dismissal, ECF No. 11 in *Young I*; Order of Dismissal, ECF No. 12 in *Young I*.

On March 21, 2014, the EEOC issued another Dismissal and Notice of Rights letter (the "Right-to-Sue Letter"), which she received March 26, 2014.   Am. Compl. ¶ 7.   She filed her new complaint in this Court on June 20, 2014, Compl., ECF No. 1, but amended it on Sept. 3, 2014 before serving Giant, Am. Compl.   The Amended Complaint comprises eight counts: (I) gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (II) disability discrimination and failure to accommodate under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; (III) retaliation under Title VII; (IV) hostile work environment under Title VII; (V) gender discrimination under the Prince George's County Code; (VI) disability discrimination and failure to accommodate under the county code; (VII) retaliation under the county code; and (VIII) hostile work environment under the county code.

On September 29, 2014, Giant filed its Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Mot. to Dismiss"), ECF No. 7, with supporting Memorandum ("Def.'s

---

[4] Although the attorney's report is not publicly available on the docket, the fact that Judge Messitte denied the motion to appoint counsel after receiving the report suggests that it was not favorable toward Young's ultimate likelihood of success.   Though this by no means demonstrates that Young may not have a valid claim on which she ultimately may prevail, it does suggest that the "inquiry reasonable under the circumstances" required by Fed. R. Civ. P. 11 would require Young's current counsel to review the report—which the record in *Young I* shows was provided to her, *see* Letter from Hon. Peter J. Messitte to Sylvia Young, *Young I*, No. PJM-12-2772 (D. Md. Apr. 16, 2013), ECF No. 12—and to address any concerns raised therein.

Dismiss Mem."), ECF No. 8.[5]  Young has opposed the motion ("Pl.'s Dismiss Opp'n"), ECF No.

14, and Giant has replied ("Def.'s Dismiss Reply"), ECF No. 15.   On December 23, 2014,

Young filed a Motion for Leave to File a Second Amended Complaint ("Pl.'s Mot. to Am."),

ECF No. 16, with a supporting Memorandum ("Pl.'s Am. Mem."), ECF No. 16.   Giant has

opposed the motion ("Def.'s Am. Opp'n"), ECF No. 18, and Young has replied ("Pl.'s Am.

Reply"), ECF No. 20.   Both the Motion to Dismiss and the Motion to Amend are ripe and are

before me.  Having reviewed the filings, I find a hearing is not required.  Loc. R. 105.6.

## II.    STANDARDS OF REVIEW

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it

fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237,

2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th

Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),

when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of

---

[5] Giant also filed a Notice of Related Case, ECF No. 6, advising me of the earlier case before
Judge Messitte.  Because Giant never was served in *Young I* and the only actions taken by the
Court before Young voluntarily dismissed her complaint were to appoint counsel to investigate
the case and deny a motion to appoint counsel to represent Young, it will not entail any
substantial duplication of labor for me to hear this case, and neither party has moved to transfer
the case to Judge Messitte.  *See* Loc. R. 103.1(b).

the elements of a cause of action, supported by mere conclusory statements, do not suffice,"
*Iqbal*, 556 U.S. at 678–79; *see Velencia*, 2012 WL 6562764, at *4 (discussing standard from
*Iqbal* and *Twombly*).   "A claim has facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Iqbal*, 556 U.S. at 663.

### B.  Motion to Amend

Fed. R. Civ. P. 15(a)(2) provides that, when the time to amend as a matter of course
pursuant to Rule 15(a)(1) does not apply, "a party may amend its pleading only with the
opposing party's written consent or the court's leave."  Whether to grant a motion for leave to
amend is within this Court's discretion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However,
leave to amend a complaint "'should [be] freely give[n] when justice so requires,' and a motion
to amend should be denied only when it would be prejudicial, there has been bad faith, or
amendment would be futile."   *Pilger v. D.M. Bowman, Inc.*, No. WDQ-10-597, 2011 WL
2579822, at *1 (D. Md. June 24, 2011) (quoting *HCMF Corp. v. Alien*, 238 F.3d 273, 276–77
(4th Cir. 2001)); *see Foman*, 371 U.S. at 182 (stating that the court also may deny leave if the
plaintiff has amended more than once already without curing the deficiencies in the complaint);
*Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  An amendment is futile if it "'fails to
satisfy the requirements of the federal rules.'"  *Guardian Life Ins. Co. v. Reinaman*, No. WDQ-
10-1374, 2011 WL 2133703 (D. Md. May 26, 2011) (quoting *United States ex rel. Wilson v.
Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted)). Put another
way, an amendment is futile if it "would not survive a motion to dismiss."  *Rawlings v. City of
Baltimore*, No. BEL-10-2077, 2011 WL 1375603, at *4 (D. Md. April 12, 2011).

## III.   DISCUSSION

### A.  Defendant's Motion to Dismiss

First, Giant argues that all of Young's claims under the Prince George's County Code are barred by the applicable, two-year statute of limitations.  Def.'s Dismiss Mem. 6–7.  Young has conceded this point, Pl.'s Dismiss Opp'n 3, and therefore counts V through VIII shall be dismissed.

#### 1.  Count IV: Hostile Work Environment

Count IV of the Amended Complaint alleges a hostile work environment under Title VII. Am. Compl. 14–16.  Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). To be actionable under 42 U.S.C. § 2000e-2(a)(1), discrimination need not be "economic" or "tangible." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citations and quotation marks omitted).  Rather, "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Id.* (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal brackets and quotation marks omitted)).

A claim for hostile work environment based on sex is actionable under Title VII if the plaintiff shows that "'the offending conduct (1) was unwelcome, (2) was because of her sex,[6] (3)

---

[6]  Although inartfully pleaded, the Amended Complaint appears to allege a hostile work environment based on Bentley's allegedly abusive and harassing treatment of Young dating to before she became disabled in the fall of 2011.  The only actions she alleges after that point were her suspensions and eventual termination, *see* Am. Compl. ¶ 67, which are traditional adverse employment actions capable of supporting a standard discrimination claim, and which will be

was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" *Westmoreland v. Prince George's County, Md.*, 876 F. Supp. 2d 594, 614 (D. Md. 2012) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (internal citation and quotation marks omitted)). "In a case where an employee is sexually harassed by a co-worker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Hoyle*, 650 F.3d at 335 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)).

Giant challenges only the second and third elements of Young's claim in its Motion to Dismiss. *See* Def.'s Mem. 10.

> To establish the second element of a sex-based hostile environment claim, a plaintiff must show that "but for" her gender she "would not have been victim of the alleged discrimination." In other words, a plaintiff needs to show that they were the target of the conduct because of their gender. A plaintiff need not show that "sexual advances or propositions" were involved.

*Engler v. Harris Corp.*, No. GLR-11-3597, 2012 WL 3745710, at *5 (D. Md. Aug. 28, 2012) (internal citations omitted). Additionally, "[t]he plaintiff must show that she subjectively felt that the work environment was hostile or abusive and that the work environment was objectively hostile or abusive to a reasonable person." *Id.* (citing *Harris*, 510 U.S. at 22). The Court determines whether the work environment was sufficiently hostile by considering "the totality of the circumstances, which include: (1) the 'frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance';

---

considered below. Because Bentley's conduct preceded Young's disability, it cannot possibly have been "because of" a disability she did not yet have, and therefore it only is necessary to consider whether it was "because of" Young's sex.

and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting

*Harris*, 510 U.S. at 23); *see Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (same).

This Court has discussed the "'high bar'" set in *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521

F.3d 306, 315 (4th Cir. 2008), which a plaintiff must clear to establish that the offensive conduct

was sufficiently severe and pervasive:

> Intermittent acts of harassment are insufficient to establish that a hostile work
> environment is severe or pervasive. Indeed, Title VII does not mandate civility in
> the workplace. Further, a supervisor's strict management style or degree of
> supervision is not evidence of actionable harassment. However, a work
> environment can be considered hostile if it is "consumed by remarks that
> intimidate, ridicule, and maliciously demean the status of women."

*Engler*, 2012 WL 3745710, at *5 (internal citations omitted).   Notably, "'simple teasing,'

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'"  *Faragher v. City of Boca*

*Raton*, 524 U.S. 775, 788 (1998) (citations omitted); *Romeo v. APS Healthcare Bethesda, Inc.*,

No. WDQ-11-2208, 2012 WL 1852264, at *9 (D. Md. May 17, 2012) (quoting *Faragher*).

Giant relies heavily on *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761 (4th Cir.

2003), in which a black woman over the age of forty brought several discrimination claims based

on allegations that she was reassigned without being told why and was shuffled into various

other positions, *id.* at 763–64; *see also* Def.'s Dismiss Mem. 9–11.  The only specific allegations

relating to discrimination were that the plaintiff, "'an African American female was consistently

paid less than and consistently did not advance as fast as similarly situated white men,'" and that

her employer's actions were "'because of her race and sex.'"  *Bass*, 324 F.3d at 765.  The Fourth

Circuit found that this "merely t[old] a story of a workplace dispute regarding her reassignment

and some perhaps callous behavior by her superiors."  *Id.  Bass* accords with the bulk of Fourth

Circuit precedent in requiring a plaintiff to present a particularized basis for alleging that

discriminatory conduct was because of membership in a protected class. *See, e.g.*, *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) (conclusory statements that plaintiff was treated differently because of race and "generalized statements of dissimilar treatment" insufficient to show discrimination based on race); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (bare allegation that supervisor "did not subject any of [plaintiff's] white peers to similarly poor treatment" did not show the treatment "was due to race rather than [the supervisor's] admittedly low regard for [plaintiff's] individual performance"); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (allegations of ill treatment at the hands of supervisors insufficient to make out hostile work environment claim where supervisor "never made any derogatory comments about [plaintiff's] race or age, and nothing about his conduct suggests it was based on these factors"); *Engler*, 2012 WL 3745710, at *5 ("[T]he fact that all three Plaintiffs are women and were treated differently, and arguably unfairly, from male colleagues is an insufficient basis to reasonably infer that the alleged conduct occurred *because of* gender."). *But see Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 332–33 (4th Cir. 2003) (en banc) (jury reasonably found discrimination was "because of sex" where workplace characterized by "sex-laden and sexist talk" and sexually inappropriate behavior directed towards plaintiff).

Young does not cite a single case in support of her position, but seeks to distinguish *Bass* on technical grounds: the plaintiff in *Bass* "argue[d] that she was not required to plead facts in support of her hostile work environment claim." *Bass*, 324 F.3d at 764; Pl.'s Dismiss Opp'n 6. However, this minor difference does not diminish the holding in *Bass* that a plaintiff must provide more than just conclusory allegations that show a hostile work environment. *See Bass*, 324 F.3d at 765. And, of course, this requirement only has been strengthened by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662.

The only substantive allegations arguably relevant to whether Young's treatment was "because of sex" are that

> Bentley exhibited a particular disdain and disrespect for her as compared to her male colleagues.  Mr. Bentley often yelled at Ms. Young and otherwise spoke disrespectful[ly] to her in front of her co-workers, refused to provide her with the resources he provided to male co-workers to do their jobs, and often ignored her telephone calls and messages to him.

Am. Compl. ¶ 11.  But simply alleging that she was treated worse than her male colleagues is not sufficient to demonstrate that the worse treatment was because of her sex.  *See Gillam*, 474 F.3d at 142.  Nor does Young allege that other women were subjected to the same treatment so as to give rise to an inference that the treatment was because of her sex.  *Cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998) (allowing for allegations of "how the alleged harasser treated members of both sexes in a mixed-sex workplace"); *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1125 (D.C. Cir. 2002) (cause of action may rest on the "claim[] that the harassers treated men as a group differently than women as a group" only if it shows that "harasser targeted multiple members of the plaintiff's sex").  Young also conclusorily alleges that she "believes she was subjected to a hostile work environment based on her gender, disability, and/or participation in protected activity," Am. Compl. ¶ 81, but it is clear that conclusory allegations do not suffice to state a hostile work environment claim, *Engler*, 2012 WL 3745710, at *6.[7]

Nor do Young's generalized allegations that Bentley showed "disdain and disrespect," "yelled at [her]," "refused to provide her with [] resources," and "ignored her telephone calls and messages," Am. Compl. ¶ 11, satisfy the "high bar" to demonstrate "severe or pervasive"

---

[7] Many of the allegations set forth in Count I of the Amended Complaint also sound in a hostile work environment claim but, because they are alleged conclusorily without any supporting factual allegations, those allegations also cannot support Young's claim.  *See* Am. Compl. ¶¶ 34–44.

conduct, *see Sunbelt Rentals*, 521 F.3d at 315.   First, Young has not "substantiate[d her] claim with reasonable specifics about the alleged incidents that underlie the claim," making it impossible to gauge whether or how Bentley's conduct altered the terms or conditions of her employment.   *See Skipper v. Giant Food Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003).   Indeed, without greater factual specificity, it is impossible to know the frequency, severity, or nature of Bentley's conduct towards Young in order to gauge whether she was subjected to severe or pervasive abuse.   *See Harris*, 510 U.S. at 23.   Simply stating that the conduct occurred "often," *see* Pl.'s Dismiss Opp'n 4–5 ("The word 'often' connotes with frequency."), is insufficient to show that it was pervasive without more context, *see Skipper*, 68 F. App'x at 398–99 (allegations that plaintiff encountered racist graffiti "daily" insufficient without more context).

It also is not conclusive that "Young definitely believed that her work environment was altered by Mr. Bentley's" conduct, Pl.'s Dismiss Opp'n 5, because she also must demonstrate that a reasonable person would have found it "objectively hostile or abusive."   *Sunbelt Rentals*, 521 F.3d at 315.   And although being disrespectful to and yelling at an employee while ignoring her messages is not the hallmark of good conduct by a supervisor,

> even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.   Some rolling with the punches is a fact of workplace life.   Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] supervisors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Id.* (internal citations omitted) (alterations in original).   Title VII is not a "'general civility code'" and it does not provide a remedy for "'the ordinary tribulations of the workplace.'"   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).   Though hardly pleasant, the disrespectful conduct alleged by Young is not sufficient to give rise to a hostile work environment claim.   *See id.*   Accordingly, Count IV must be dismissed.

    *2.  Count I: Sex Discrimination*

    To succeed on a claim for gender-based termination, a plaintiff must show

> that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

*Westmoreland v. Prince George's County, Md.*, 876 F. Supp. 2d 594, 604 (D. Md. 2012); *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Riley v. Technical & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460–61 (D. Md. 1995).  In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973), applies to Title VII claims, including termination and retaliation claims.  *IJames v. Autumn Corp.*, No. 1:08CV777, 2009 WL 2171252, at *8 (M.D.N.C. July 20, 2009); *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006).  Under this framework, after an employee makes out a *prima facie* case, the burden shifts to the employer, which then must "proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Wright v. Sw. Airlines*, 319 Fed. App'x 232, 233 (4th Cir. 2009).  If the employer does so, the burden shifts back to the employee "to prove by a preponderance of the evidence that the proffered reasons were pretextual." *Id.* at 233.

    Although Count I of Young's Amended Complaint purports to be a distinct Title VII discrimination claim, it also alleges "adverse actions . . . including harassment and disrespectful treatment as compared to her male colleagues, threats of termination if she continued to complain about the disparate treatment, suspension and termination."  This takes an impermissibly broad view of the definition of an adverse employment action in a standard Title VII discrimination case.  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). To the extent that Young seeks redress for the way she was treated during her employment, her claim sounds in hostile work environment and already has been discussed above. *See Meritor Sav. Bank*, 477 U.S. at 64–65. Insofar as Young alleges that she was fired as a result of sex discrimination, she has alleged the sort of adverse employment action that may give rise to a discriminatory discharge claim under Title VII.

Giant concedes—as it must—that Young is a member of a protected class who suffered an adverse employment action. Def.'s Dismiss Mem. 15. However, Giant argues that Young did not allege that she was meeting her employer's legitimate expectations or provide more than conclusory allegations that similarly situated employees outside of her protected class were subject to better treatment. *Id.* at 15–16.

Young acknowledges that she did not expressly plead that she was satisfying her employer's reasonable expectations, but—without citing to any case authority for her position— she argues that the mere fact that she remained employed by Giant for over seven years provides an inference that she was meeting her employer's reasonable expectations. Because she is required to plead that she was meeting her employer's expectations *at the time of the adverse employment action*, *see Westmoreland*, 876 F. Supp. 2d at 604, the fact that she performed adequately over a seven year period prior to 2011 is not sufficient to meet her burden. It remains entirely possible that Young performed well for seven years and then was terminated after her performance began to decline. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 547 (4th Cir. 1995), *rev'd on other grounds*, 517 U.S. 308 (1996) (performance reviews from 1989 "are irrelevant because [plaintiff] was not performing well in August of 1990, the time of termination"). To make out a claim for discriminatory discharge, Young must plead facts to

show that her employer would have regarded her as meeting its legitimate explanations when she was fired.  *See King v. Rumsfeld*, 328 F.3d 145, 149–50 (4th Cir. 2003).  This she has not done.

Young also does not plead that her position was held open or that she was replaced by somebody outside of her protected class (*i.e.*, by a male).  *See* Am. Compl.  Young maintains that "[w]ho replaced Ms. Young [as an] asset protection officer is a private personnel matter tha[t] Ms. Young does not know at this stage, but could develop during discovery."  Pl.'s Dismiss Opp'n 7.  But it is well-settled in the Fourth Circuit that, under ordinary circumstances, a plaintiff must show that the position was filled by somebody outside of the protected class in order to make out a *prima facie* case for discriminatory discharge.  *Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005); *see also Jyachosky v. Winter*, 343 F. App'x 871, 876 (4th Cir. 2009).  Although a plaintiff in a discrimination case need not meet any heightened pleading requirements in pleading a *prima facie* case, *see Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002), a plaintiff still must "allege facts sufficient to state all the elements of her claim."  *Bass*, 324 F.3d at 765; *see also Lee v. Safeway, Inc.*, No. RDB-13-3476, 2014 WL 4926183, at *7 (D. Md. Sept. 30, 2014) ("Although *Swierkiewicz* does not require a plaintiff to prove each element of a *prima facie* case in her complaint, *Iqbal* and *Twombly* require enough specificity to make the complaint plausible, not merely possible." (citing *Iqbal*, 556 U.S. at 678)).  Young has not done so here and has not even provided any indication that she or her counsel even have attempted the reasonable inquiry required by Fed. R. Civ. P. 11(b).  Accordingly, Count I must be dismissed.

### 3.  *Count III: Retaliation*

Young also alleges that she was the subject of retaliatory action culminating in her suspension and eventual termination in December 2011.  42 U.S.C. § 2000e-3(a) provides that it is unlawful for an employer "to discriminate against any individual . . . because he has opposed

any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  Although "[t]he plain meaning of the statutory language provides protection of an employee's opposition activity when the employee responds to an actual unlawful employment practice," the Fourth Circuit has "[r]ead[] the language generously to give effect to its purpose" and "held that opposition activity is protected when it responds to an employment practice that the employee *reasonably believes* is unlawful."  *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), *overruled by Boyer-Liberto v. Fontainebleau Corp.*, ---- F.3d ----, No. 13-1473 (4th Cir. May 7, 2015) (en banc).

To succeed on a Title VII retaliation claim, a plaintiff must show that (1) she "'engaged in protected activity,'" (2) the employer "'took adverse action against [her],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'"  *Westmoreland*, 876 F. Supp. 2d at 612 (quoting *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (alterations in original)).  Once again, the *McDonnell Douglas* burden-shifting framework applies.  *See IJames*, 2009 WL 2171252, at *8; *Yashenko*, 446 F.3d at 546.

Giant argues that Young has not satisfied the first necessary element of a *prima facie* case because, in its view, her belief she was opposing a Title VII violation was not objectively reasonable.  For this proposition, Giant relies on *Jordan v. Alternative Resources Corp.*, which seemed to reject the notion that an employee could have an objectively reasonable belief of a hostile work environment in the absence of evidence "that a plan was in motion to create such an environment" or "that such an environment was [] likely to occur."  458 F.3d at 340.  In essence, to hold a reasonable belief of a Title VII violation so as to protect a complaining employee,

*Jordan* required the employee to have concluded, based upon facts and circumstances already in existence, that the employer's conduct met the legal definition of a Title VII violation.

However, just this month the Fourth Circuit rejected the standard enunciated in *Jordan*, recognizing that it "is at odds with the hope and expectation that employees will report harassment early, before it rises to the level of a hostile environment," and "deters harassment victims from speaking up by depriving them of their statutory entitlement to protection from retaliation." *Boyer-Liberto*, No. 13-1473 at *38–40. Accordingly, the court found that it "need look no further than *Jordan* itself to comprehend that the *Jordan* standard is unsuited to its purpose." *Id.* at 41. However, *Boyer-Liberto* has replaced the *Jordan* standard only in part, holding that "when assessing the reasonableness of an employee's belief that a hostile environment is occurring based on an isolated incident, the focus should be on the severity of the harassment." *Id.* at 42.

This rule is of limited utility in a case such as this, where Young does not allege that she complained of a single, isolated incident. Rather, she complained about what she viewed as a protracted pattern of preferential treatment given to male employees and corresponding unfavorable treatment given to her as a woman. This goes beyond the majority of cases in which a plaintiff was held to have lacked an objectively reasonable belief that Title VII was being violated. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (employee could not reasonably believe Title VII was violated by isolated comment made by co-worker when reviewing reports of prior sexually inappropriate comments made in the workplace by current job applicant); *Session v. Montgomery Cnty. Sch. Bd.*, 462 F. App'x 323 (4th Cir. 2012) (two offhand comments referencing the fact that plaintiff was black could not create an objectively reasonable belief of hostile work environment). However, it is less clear cut than *E.E.O.C. v.*

*Navy Federal Credit Union*, in which opposing an unlawful plan to fire an employee in retaliation for complaining of discrimination was found to be protected activity.  424 F.3d 397 (4th Cir. 2005).

Although there has not been a chance for further illumination of the holding in *Boyer-Liberto*, the majority in that case quoted heavily from Judge King's dissent in *Jordan*, in which he observed:

> A hostile work environment is unique among the employment practices that contravene Title VII, in that such an environment normally develops through a series of separate acts, which might not, standing alone, violate Title VII.  Indeed, such an environment is usually the sum of several parts.  And whether a hostile work environment exists can be a bit of a moving target; there is no "mathematically precise test."
>
> An employee who opposes a hostile work environment is engaged in a "protected activity" and cannot be retaliated against.  The Supreme Court emphasized in June [of 2006] that "Title VII depends for its enforcement upon the cooperation of employees," and that "effective enforcement [of Title VII] could thus only be expected if employees felt free to approach officials with their grievances."  According to the Court, "[i]nterpreting the anti-retaliation provision to provide broad protection from retaliation helps assure the cooperation upon which accomplishment of [Title VII's] primary objective"—preventing harm—"depends."
>
> And we have recognized that a plaintiff pursuing a Title VII retaliation claim need not show that the activity he opposed has, in fact, contravened some aspect of Title VII.  Rather, he must simply have a reasonable belief that Title VII has been—or is in the process of being—violated by the activity being opposed.

*Jordan*, 458 F.3d at 351–52 (King, J., dissenting) (internal citations omitted).  Under Judge King's reasoning, an employee need not wait until a warning plume of smoke erupts into a conflagration that makes a workplace intolerable; to the contrary, an employee is expected "to report such incidents in order to *prevent* hostile work environments from coming into being."  *Id.* at 354 (emphasis added).

In light of *Boyer-Liberto* and Judge King's dissent in *Jordan*, I believe that the appropriately broad reading of Title VII extends its protection to an employee who reasonably

fears that she is being subjected to unfavorable treatment based on her sex, even where, as here, that treatment does not rise to the level of creating a hostile work environment. Just as the use of an offensive racial slur may "open[] a window into [the speaker's] soul" and gives rise to the "entirely reasonable" belief "that a person who—even in a moment of extreme frustration—[uses such language] possesses a deep disdain for the entire black community and would likely repeat his offending conduct," *Jordan*, 458 F.3d at 353 (King, J., dissenting), a supervisor who treats a female employee with "particular disdain and disrespect" not directed at male employees also may be showing a tendency that, over time, will develop into a truly hostile work environment. And "refus[ing] to provide her with the resources he provided to male co-workers to do their jobs," Am. Compl. ¶ 11, may not create a hostile work environment in isolation, but it may presage a workplace where, over time, women are placed at a distinct and deliberate disadvantage.

It is apparent from the complaint that Young subjectively perceived that she was being discriminated against and identified objective ways in which she was exposed to less favorable treatment, albeit treatment that, as pleaded, did not render her workplace hostile. And although she did not know the precise (and ever-shifting) contours of Title VII, she understood that it prohibits systematic workplace discrimination on the basis of sex.[8] I find that this suffices to give rise to an objectively reasonable belief that Title VII was being violated. Moreover, I think

---

[8] Though at least one court has held that a plaintiff must be charged with "knowledge of the substantive law" of discrimination, *see Harper v. Blockbuster Entmt. Corp.*, 139 F.3d 1385, 1388 n.3 (11th Cir. 1998), I cannot see how it is reasonable to apply this standard to lay plaintiffs in more than the broadest sense. Young was aware that sex discrimination—and creating a workplace that was intolerably hostile to women because of their sex—was prohibited by the law, and that the appropriate action for her to take in that circumstance was to report her concerns up the chain. To expect more of the average plaintiff would be tantamount to imposing the impossibly difficult requirement that she must retain counsel and, in essence, to draft a complaint before seeking to resolve her concerns through informal means.

that this rule protects employers as well as employees: by encouraging employees to report their concerns early, employers have the opportunity to address those concerns internally before a buildup of bad blood and, possibly, the need for an employee to retain counsel before voicing concerns allow inertia to build up in favor of an inevitable lawsuit.  Accordingly, I find that Young acted on a reasonable—if inaccurate—belief that she was subjected to sex discrimination.

Giant also argues that Young made only "non-specific, nondiscriminatory allegations" that are not clear enough to "allow the Court to reasonably infer that Mr. Bentley made derogatory gender-based comments to Plaintiff, or otherwise treated her in a demeaning manner *because* of her gender."  Pl.'s Dismiss Mem. 20.  In furtherance of this argument, Giant relies on a series of cases that stand for the proposition that merely objecting to workplace conditions as unfair is insufficient to "oppose" a Title VII violation for the purpose of the statute.  *See Jackson v. S.C. State Ports Auth.*, No. 2:12-cv-1283 DCN BM, 2014 WL 843270, at *2–3 (D.S.C. March 4, 2014) ("filing a grievance complaining of 'unfair treatment'" "is not protected activity for purposes of a civil rights claim" (citing *Sung Kun Kim v. Panetta*, No. 11-1370, 2012 WL 3600288, at *17 (E.D. Va. Aug. 21, 2012)); *Ruffner v. MD OMG EMP LLC*, No. WDQ-11-1880, 2012 WL 3542019, at *3 (D. Md. Aug. 13, 2012) ("The employee must, at least implicitly or indirectly, complain about or oppose prohibited discrimination.  Complaints about a supervisor's 'rude' conduct, or other generalized complaints which do not alert the employer or person receiving the complaint 'that [the employee's] complaints were based on an allegation of discrimination,' are not protected activity." (footnotes omitted) (alteration in original)).

But here, Young does not allege that she complained generally of "unfair treatment"; she alleges that she complained about "Bentley's disparate treatment of her as compared to her male co-workers."  Am. Compl. ¶ 13.  This falls well within the range of statements that have been

held sufficient to voice a complaint of Title VII violations.  *See, e.g.*, *Okoli v. City of Balt.*, 648 F.3d 216, 224 (4th Cir. 2011) (city should have known that complaints of "'harassment' likely encompassed sexual harassment" and "'unethical,' 'degrading and dehumanizing' conduct suggest[ed] severe misbehavior related to [plaintiff's] identity").  No particular magic words are required, all that is necessary is that "the employee at least have actually opposed employment practices made unlawful *by Title VII*," rather than raised generalized workplace grievances. *McNair v. Computer Data Sys., Inc.* 172 F.3d 863, 1999 WL 30959, at *5 (4th Cir. Jan. 26, 1999).  There can be no question that complaining of disparate treatment as compared to male co-workers was sufficient to inform her employer that Young was objecting to perceived sex discrimination.  Accordingly, her activity, as alleged, was protected.

And even had Young not been clear in her complaint to Rosoto, her attorney sent a letter to Giant on December 2, 2011, "advis[ing] that his law firm would be representing Ms. Young regarding her claims of gender discrimination, disability discrimination, and retaliation based on harassment and adverse actions."  Am. Comp. ¶ 20.  There can be no doubt that these letters, as characterized in the complaint, constituted protected activity taken on Young's behalf.  *See Alexander v. Glut Food Coop*, No. AW-10-955, 2012 WL 4846759, at *3 (D. Md. Oct. 10, 2012).[9]  Accordingly, Young engaged in protected activity when she complained to Rosoto in

---

[9] Giant disputes this proposition only on the ground that it disputes whether Young's attorney— who is not her counsel in this case—could have had an objectively reasonable belief of a Title VII violation.  Because I already have found that Young's belief was objectively reasonable under the standard set forth in *Boyer-Liberto*, this cannot be a basis to find that the subsequent letter from Young's attorney lacked an objectively reasonable basis.  However, even if Title VII may not require an employee to have a thorough knowledge of the current relevant case law before voicing her concerns, an attorney who sends a letter threatening legal action without a good-faith legal basis for doing so still may be violating his professional obligations and providing negligent representation to his client.  Further, if an attorney were to bring said legal action without a good-faith basis, Fed. R. Civ. P. 11 would permit appropriate sanctions.

July 2011, and again when her lawyer contacted Giant in December 2011, and she validly has stated a claim for retaliation.

    *4.  Count II: ADA Discrimination and Failure to Accommodate*

Count II of Young's complaint actually alleges two separate, but related, causes of action arising under the ADA: failure to accommodate and discriminatory discharge.  Giant moves to dismiss both of these claims, and I will consider each in turn.

"To establish a *prima facie* wrongful discharge claim under the ADA, a plaintiff must show that (1) she was a qualified individual with a disability; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted).  For the purposes of its motion to dismiss, Giant argues that Young has not sufficiently alleged that she was a qualified individual or that she was fulfilling her employer's legitimate expectations at the time of discharge.  Def.'s Dismiss Mem. 25–26.

"To establish that [she] is a qualified individual, the Plaintiff must prove that (a) [she] was disabled when discharged and (b) [she] was qualified to perform the essential functions of [her] position." *Munoz v. Balt. County, Md.*, No. RDB-11-2693, 2012 WL 3038602, at *7 (D. Md. July 25, 2012).  Assuming that Young had a qualifying disability (as Giant does for the purposes of its motion), she has not provided any meaningful information about the essential functions of her job—that is, "'those that bear more than a marginal relationship to the job at issue.'"  *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 F. App'x 472, 480 (4th Cir. 2010) (quoting *Tyndal v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994)).  Although Young alleges that she was an "asset protection officer," Am. Compl. ¶ 9, "[i]t is not possible to tell

from the Amended Complaint what the Plaintiff's job involves.   Without even a cursory description of what kind of work the Plaintiff does, she has simply recited the elements of the cause of action."   *Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 623 (D. Md. 2014).   Such threadbare allegations do not satisfy *Iqbal* and *Twombly*, particularly where Young bears the burden to demonstrate each element.   *See Tyndall*, 31 F.3d at 213.

Young argues that her ability to perform the essential functions of her job can be inferred from allegations that she worked from October 2, 2011 until the date of her suspension on October 18, 2011, and again from November 5, 2011, until her suspension on December 5, 2011 and subsequent termination.   Pl.'s Dismiss Opp'n 12.   However, this argument is wholly unsupported with case law and, in any event, utterly defies logic: the fact that between October and December 2011, Young was suspended twice and then terminated lends itself far more easily to the inference that she *was not* performing her job adequately.

For the reasons discussed above, Young also has not shown that she was meeting her employer's legitimate expectations at the time of her discharge.   *See Rubino*, 44 F. Supp. 3d at 623–24 (dismissing case where plaintiff "makes no allegation whatsoever about his job performance or whether [his employer] considered him a satisfactory employee").

Giant also seeks to dismiss Young's claim that she was denied a reasonable accommodation for a disability.   "In a failure to accommodate case, a plaintiff establishes a prima facie case by showing (1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations."   *Rhoads*, 257 F.3d at 387 n.11.

Because Young has not provided "even a cursory description of what kind of work the Plaintiff does," it is not possible to determine the essential functions of her position or whether there was a reasonable accommodation that would have allowed her to perform those functions. *See Rubino*, 44 F. Supp. 3d at 623.   Nor has she met her "burden of identifying an accommodation that would allow a qualified individual to perform the job." *Shin*, 369 F. App'x at 481.   However, because I find below that Young's proposed amendment would validly state a reasonable accommodation claim, the motion to dismiss Count II will be denied as moot in light of the amendment.

### B.  Plaintiff's Motion to Amend

"Out of an abundance of caution and not as an admission that the Amended Complaint is insufficiently pleaded, Plaintiff file[d a] motion" seeking leave to amend her complaint a second time.  Pl.'s Am. Mem. 1.  Leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), unless amendment would prejudice the opposing party, reward the movant's bad faith, or be futile, *MTB Servs. v. Tuckerman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013).

Young makes only cursory arguments in favor of amendment, stating conclusorily that "there can be no colorable claim of prejudice, bad faith or futility" because this case "is at a very early stage," she "has moved promptly to amend, and the proposed amendment would cure any alleged deficiencies in the Amended Complaint."  Pl.'s Am. Mem. 2.

Giant opposes the Motion to Amend primarily on procedural grounds.  Def.'s Am. Opp'n.  First, Giant argues that Young has waited too long to amend her complaint based on information that she knew before bringing this action, relying on a series of cases in which plaintiffs were denied leave for seeking to amend too far into the litigation of a case.  *See id.* at

6–8; *see also I & G Investors, LLC v. Dunn*, No. JKS-12-1109, 2013 WL 140860, at *2 (D. Md. Jan. 10, 2013) (denying leave to amend sought over a year after filing initial complaint); *Jensen v. W. Carolina Univ.*, No. 2:11cv33, 2012 WL 5439144, at *2–4 (W.D.N.C. Nov. 7, 2012) (denying leave to amend complaint after deadline to do so had passed and after summary judgment motion had been filed); *Joiner v. Choicepoint Servs., Inc.*, No. 1:05CV321, 2006 WL 2716090, at *1–2 (W.D.N.C. Sept. 22, 2006) (denying leave to amend complaint two weeks before close of discovery).  However, in all of these cases leave was not denied simply because too much time had passed since the underlying events, but because the plaintiff had waited until after crucial scheduling deadlines had passed, *see Jensen*, 2012 WL 5439144, at *4, or until granting leave to amend would have required pushing back additional deadlines and extending discovery, *see I & G Investors*, 2013 WL 140860, at *2; *Joiner*, 2006 WL 2716090, at *1–2. Here, a scheduling order has not yet issued and the parties have not even begun discovery.

This case also is distinguishable from *United States ex rel. Black v. Health & Hospitals Corp. of Marion County*, No. RDB-08-390, 2011 WL 1161737 (D. Md. March 28, 2011), *aff'd* 494 F. App'x 285 (4th Cir. 2012), a False Claims Act case that involved not a motion for leave to amend, but rather a motion to *defer* the issue of amendment until *after* the Court adjudicated the pending motion to dismiss.  The motion to defer did not include a proposed amended complaint and "essentially sought a roadmap, namely a decision by this Court outlining those deficiencies [in the amended complaint], by which to cobble together a plausible and particularized set of allegations to file, yet again, another amended complaint." *Id.* at *15.  In light of the fact that the plaintiff continually had failed to state a cognizable claim in two different courts while the United States refused to intervene, the Court dismissed the plaintiff's complaint as futile. *Id.*  As the Court explained, "this unusual request certainly runs afoul of its purpose, which is to

'provide the district court with a means by which to determine whether the amendment would cure the defects in the initial complaint.'" *Id.* at *15 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009)).

The most obvious difference here is that Young has provided the Court with a proposed Second Amended Complaint, Pl.'s Mot. to Am. Ex., ECF No. 16-1, as well as a redlined copy reflecting changes between the Amended Complaint and the Second Amended Complaint, Redlined 2d Am. Compl., Pl.'s Mot. to Am. Ex., ECF No. 16-2, as is required by Loc. R. 103.6. This makes it possible to evaluate whether the amendment would correct the shortcomings of the Amended Complaint, or whether it would be futile for failing to do so. *See Francis*, 588 F.3d at 197. Further, the procedural posture here—though bearing superficial similarities to that in *Black*—is in fact much different. True, Young seeks leave to file her fourth complaint in two cases, but Giant was not even served in *Young I*, *see* Letter Order, ECF No. 10 in *Young I*, and the first complaint that it has seen is the current Amended Complaint—which did not contain substantive changes from the initial Complaint, *see* Pl.'s Am. Reply 5.

Nor is there anything intrinsically improper about voluntarily dismissing a case and then refiling at a later date. This is expressly contemplated by Fed. R. Civ. P. 41(a)(1)(B), and expressly was permitted by Judge Messitte's order granting dismissal without prejudice. Mot. for Voluntary Dismissal, ECF No. 11 in *Young I*; Order of Dismissal, ECF No. 12 in *Young I*. This particularly is so where, as here, Young has refiled in the same Court based on a more robust EEOC charge, *see* Pl.'s Am. Reply 4–5 (explaining that the original EEOC Charge did not include claims for wrongful termination or retaliation), and does not appear to have been simply forum shopping or engaging in tactical maneuvers, *cf. Black*, 2012 WL 1161737, at *15 (noting that Black had brought four complaints in two separate districts). *But see Harvey Specialty &*

27

*Supply, Inc. v. Anson Flowline Equip Inc.*, 434 F.3d 320, 324 n.15 (5th Cir. 2005) ("We note that plaintiffs in removed cases frequently use the rule to re-file an action in state court to secure their preferred forum by, *inter alia*, adding non-diverse parties. . . . While this may seem distasteful to opposing parties, we have 'consistently held that Rule 41(a)(1) means what it says . . . [and] [d]efendants who desire to prevent plaintiffs from invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the simple step of filing an answer.'" (internal citations omitted)).

Giant also makes the unsupported—and incorrect—argument that "it is not proper to grant a motion for leave to amend a complaint that is filed in direct response to a motion to dismiss, where the claims in the present complaint are not viable as a matter of law." Def.'s Am. Opp'n 10. To the contrary, Fed. R. Civ. P. 15(a)(1)(B) expressly permits a party to respond to a motion to dismiss by filing an amended complaint. *See also* Fed. R. Civ. P. 15 advisory committee's note to 2009 Amendments ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."). The only reason Young requires leave of court here is because this is her second amendment and she waited more than twenty-one days after the motion to dismiss was filed. To counter this proposition, Giant relies on a series of inapposite cases that simply stand for the well-established proposition that an amendment sought late in a litigation—such as near or after the end of discovery, during the briefing of dispositive motions, or on the eve of trial—may be denied as prejudicial. *See Jensen*, 2012 WL 5439144, at *2–3 (denying leave to amend after deadline to amend and close of discovery in response to summary judgment motion); *Wallace v. City of Carrollton*, No. 3:11-CV-1037-M (BF), 2012 WL 6000606 (N.D. Tex. Oct. 25, 2012) (denying motion to amend filed in response to motion for judgment on

the pleadings nearly a year after plaintiff was put on notice of deficiencies in the complaint); *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505 (N.D. Cal. 2011), *aff'd* 475 F. App'x 334 (Fed. Cir. 2012) (per curiam) (denying motion to amend two years into case and almost a month after summary judgment fully briefed);

Giant also argues that amendment would be prejudicial because the Second Amended Complaint still does not state a claim for which relief can be granted.  Def.'s Am. Opp'n 13.  This actually is an objection that the proposed amendment is futile, and here Giant is on firmer ground.  *See Rawlings v. City of Baltimore*, No. L-10-2077, 2011 WL 1375603, at *4 (D. Md. Apr. 12, 2011) (motion to amend is futile where it "would not survive a motion to dismiss").  The Second Amended Complaint is more than just "re-labeled headings and additional conclusory recitations of claims," *Shield Our Constitutional Rights and Justice v. Tippett*, No. DKC 2009-152, 2009 WL 2961428, at *2 (D. Md. Sept. 11, 2009); Young has added considerably more robust factual allegations.  However, those additions are futile if they still do not plead a claim for which relief can be granted.

First, there are some amendments to which there appears to be no objection.  Young seeks to correct the caption to reflect the proper Defendant, as Giant has requested.  *See* Def.'s Dismiss Mem. 1 n.1; Redlined 2d Am. Compl. 1.  She also seeks to strike all of her state-law causes of action.  *See* Redlined 2nd Am. Compl. 22–32.  These amendments, sought by Giant, shall be permitted.

With respect to Young's hostile work environment claim, she seeks to add meaningful detail to her complaint.  The proposed changes would explain that she was one of two female store detectives and investigators supervised by Bentley; that she was the only woman assigned to the Landover office; that the male store detectives worked in pairs but Young was forced to

work alone; and that Bentley raised his voice to Young at least weekly in response to complaints about her disproportionate workload.  Redlined 2d Am. Compl. ¶¶ 13–15.  Unfortunately for Young, this still does not suffice to plead a hostile work environment claim.  None of Young's allegations establish that her treatment was "because of" sex, rather than the result of non-sex-related personal friction between her and Bentley.  *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (mere allegations of differential treatment not sufficient to show differences were because of membership in protected class).  In fact, because Young now alleges that she was one of two women, but does not allege that the other woman also was subjected to similar working conditions, Young's Second Amended Complaint is even weaker on this point than her first Amended Complaint.  *Cf. Davis v. Coastal Int'l Sec., Inc.*, 274 F.3d 1119, 1125 (D.C. Cir. 2002) (cause of action may rest on the "claim[] that the harassers treated men as a group differently than women as a group" only if it shows that "harasser targeted multiple members of the plaintiff's sex").[10]

And although Young has added details about what additional work she was given and how often she was yelled at, she has not provided details showing that her treatment was "severe or pervasive."  She does not describe how working alone made her job intolerable or made it impossible for her to perform her duties; to the contrary, based on allegations that she consistently performed above expectations, *see* Redlined 2d Am. Compl. ¶ 11–12, she was doing exemplary work despite working alone.  And being yelled at by Bentley when she confronted him about her work assignments may have been unpleasant, but it does not sound like more than the type of "'rude treatment,'" "'callous behavior,'" or "'routine difference of opinion and

---

[10] The fact that Young was one of ten detectives in the Landover office also suggests that she cannot have been the only detective who worked alone; simple arithmetic suggests that, out of an even number of detectives, if one works alone, at least one other also must do so.

personality conflict with [one's] supervisor,'" *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (alterations in original).   Amending Count IV would not allow Young to state a claim and would be futile.

Young also still has not pleaded a valid claim for discriminatory discharge based on sex. Although she has added allegations showing that she was an exemplary employee through August 2011, she acknowledges (and, in fact, her ADA claims expressly rely on) a significant change in her health that led to several work restrictions and requests for accommodation. Redlined 2d Am. Compl. ¶¶ 18–20.   And when she was suspended in October 2011, it was because "she allegedly could not properly perform her duties."   *Id.* ¶ 21.   This alleges—fairly conclusively—that whatever Young's views, Giant did not view her as meeting its legitimate expectations. *See King v. Rumsfeld*, 328 F.3d 145, 149–50 (4th Cir. 2003).   And Young still has not added any allegations as to what became of her position after she was terminated. *See Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005).   Amendment of Count I also would be futile.

For the same reason, Young has not shown—and likely cannot show—that she was meeting her employer's legitimate expectations for the purposes of her ADA discrimination claim.   *See Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004).   And although she has added allegations regarding her job duties as a store detective, Redlined 2d Am. Compl. ¶ 10, it appears that she was not fulfilling these duties because she was missing work and was restricted in the work that she could do, *id.* ¶¶ 18–22; *see Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 ("[I]n addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis.").   By acknowledging that she required accommodations in order to work, Young also acknowledges that she cannot state a claim for ADA discrimination.

But Young *has* added meaningful new allegations with respect to her reasonable accommodations claim.  She has laid out her job description, which

> included to detect, identify and resolve security related activities in stores; to detect sources of shrink and inventory loss; to collect necessary documents for the preparation of court cases; to coordinate with various law enforcement agencies and consult with State's Attorney's office in prosecution of cases; to apply the law; respond to emergencies; and to evaluate situations, make appropriate decisions regarding response, and ensure proper documentation is completed.  Although not part of her job description, Ms. Young was routinely required to assist with investigations of internal thefts by employees.

Redlined 2d Am. Compl. ¶ 10.  And she has added allegations about the medical restrictions that she needed accommodated: "restrictions against driving over 100 miles per day, lifting over 10 pounds, and no reaching or pulling with right arm," *id.* ¶ 22.  According to Young, she was told that she would not be permitted to work until she was "fully cleared . . . with no restrictions." *Id.* ¶ 23.  Though hardly robust, this goes beyond merely reciting the elements of a cause of action. *See Rubino v. New Action Mobile Indus., LLC*, 44 F. Supp. 3d 616, 321 (D. Md. 2014).  And though she has not expressly explained why these accommodations would be "reasonable" while allowing her to satisfy her job's essential functions, I can see no clear way that a restriction on driving long distances or lifting heavy items prevents Young from performing any of the duties that she has listed.  Accordingly, I find that the Second Amended Complaint would remedy the defects in Young's reasonable accommodation claim and allow her—just barely—to satisfy her burden on that claim.  Accordingly, amendment of Count III would not be futile with respect to her reasonable accommodation claim.

And finally, although Young already validly pleaded her retaliation claim in her first Amended Complaint, she has added additional factual allegations and none of these undermines her claim.  Count IV continues to state a claim with the proposed amendments and amendment would not be futile.

I note as well that Young's first Amended Complaint was extremely sparse in its factual allegations, *see generally* Am. Compl., particularly in light of the robust universe of Title VII and ADA case law that clearly lays out the facts a Plaintiff must plead to lay out a *prima facie* case. Although there is nothing improper in shoring up a complaint's allegations to address deficiencies identified in a motion to dismiss, "repeated failure to cure deficiencies by amendments previously allowed" is a sufficient basis to deny amendment of pleadings. *Foman v. Davis*, 371 U.S. 178, 182. Accordingly, although Young will be allowed to amend her complaint, she will not be granted leave to amend it further without a showing of good cause, and if any of her claims are dismissed in the future, the dismissal will be with prejudice.

## IV.    CONCLUSION

Accordingly, Defendant's Motion to Dismiss will be DENIED with respect to Count III, DENIED as moot with respect to Count II insofar as it purports to state a claim for failure to accommodate, and otherwise GRANTED;

Plaintiff's Motion to Amend is DENIED with respect to Counts I and IV and otherwise is GRANTED;

Plaintiff will be allowed no further amendments without good cause; and

Pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendant SHALL HAVE fourteen (14) days to answer the Second Amended Complaint.

A separate order shall issue.

Dated: June 8, 2015                                           /S/
                                                      Paul W. Grimm
                                                      United States District Judge

dsy